NOT DESIGNATED FOR PUBLICATION

No. 120,900

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOSE LOPEZ-SANCHEZ,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed August 7, 2020. Affirmed.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: A jury sitting in Johnson County District Court convicted Defendant Jose Lopez-Sanchez of three felonies based on his unsuccessful effort to cash a forged check at a local branch of a national bank. Lopez-Sanchez has appealed arguing the trial evidence showed that a mystery woman named Yvonne duped him into presenting the check, so he lacked the requisite bad intent to commit any of the crimes. This challenge to the sufficiency of the evidence goes no place, since it would impermissibly require us to reweigh the evidence and to disregard an obvious credibility

1

finding by the jury against Lopez-Sanchez. We, therefore, affirm the convictions and the resulting sentences the district court imposed on Lopez-Sanchez.

In mid-February 2018, Lopez-Sanchez opened an account at a Bank of America branch in Lenexa. Three days later, Lopez-Sanchez presented a $4,550 check payable to him ostensibly drawn on a Houston, Texas business and signed by its owner. Lopez-Sanchez told the teller he wanted to deposit $100 and to take the rest in cash. Those circumstances—a relatively large check and a request for a disproportionately split deposit—prompted the teller to look further, revealing a fraud alert for the business account. The teller then conferred with her supervisor. Their quick investigation, aided by computer technology, disclosed a veritable parade of additional red flags. The fraud alert had been issued for the company account because questionable checks had recently been presented elsewhere in the country. The signature on the check appeared to deviate from the owner's actual signature. The printing and formatting of the check Lopez-Sanchez brought in differed slightly from the company's actual checks. And the check was dated for the day Lopez-Sanchez presented it—at the very least an odd circumstance, since the company was located two states to the south.

All of that led the bank supervisor to call the company president in Houston. He said he did not issue a check to Lopez-Sanchez. The bank supervisor's next call was to the Lenexa police.

A detective with the Lenexa Police Department promptly arrived and spoke with Lopez-Sanchez. Lopez-Sanchez initially told the detective a man named Matt (corresponding to the business owner's name) had given him the check earlier in the day at a restaurant in Lenexa for work he had done on the man's house. The detective arrested Lopez-Sanchez and drove him to the Lenexa police station. Lopez-Sanchez then told the detective a coworker named Juan had given him the check to cash. Although English was

2

plainly not Lopez-Sanchez' primary language, the detective questioned him without a translator.

The State charged Lopez-Sanchez with forgery, a felony violation of K.S.A. 2017 Supp. 21-5823, for presenting the check; identity theft, a felony violation of K.S.A. 2017 Supp. 21-6107, for the unauthorized appropriation of the company president's name and the company's bank account number, both of which appeared on the fraudulent check; and attempted theft, a felony violation of K.S.A. 2017 Supp. 21-5301, for trying to obtain money belonging to the Houston company without consent. The jury heard the case in a single day in early November 2018.

The State presented testimony and other evidence through the bank personnel and the Lenexa detective. In addition, the president of the Houston company testified that he did not know Lopez-Sanchez and neither issued a check to him nor authorized him to cash the particular check he presented to the Bank of America branch. Lopez-Sanchez testified in his own defense through a translator. He told the jury he had met a woman in Topeka named Yvonne and bought her some food because she was hungry and had no money. According to Lopez-Sanchez, Yvonne sent him a series of text messages that evening. He didn't respond. She nonetheless called him a day or two later asking for his help in cashing a large check. Yvonne told him that she had no Kansas identification. In his testimony, Lopez-Sanchez professed reluctance to help Yvonne but eventually agreed. He told the jury they met in Lenexa, and Yvonne gave him the check and advised him to say that "Matthew L." had paid him for work on a house. Lopez-Sanchez was supposed to contact Yvonne after he cashed the check at his bank.

Yvonne did not appear as a witness during the trial. And Lopez-Sanchez offered no evidence to corroborate her existence.

3

Lopez-Sanchez did tell the jury that he does not speak English very well and likely misunderstood what the detective was asking him at the bank and later at the police station. For example, he told the jury that he had identified Juan as one of several people who could pick up his truck for him and not as the person who gave him the check.

The jury convicted Lopez-Sanchez of all three charges. About 3 months later, the district court sentenced Lopez-Sanchez to a controlling prison term of 8 months and placed him on probation for 18 months to begin after he served 30 days of "shock time" in the county jail. Lopez-Sanchez has appealed.

On appeal, Lopez-Sanchez contends there was insufficient evidence to convict him of any of the three crimes. His argument is narrowly focused on the requirement that he must have acted with an unlawful criminal intent or mens rea in trying to cash the check. He concedes that his actions in presenting the check satisfy the unlawful conduct supporting each of the crimes. But the State typically must prove both unlawful conduct and a criminal intent to convict a defendant of a felony. See K.S.A. 2019 Supp. 21-5202(a), (d); K.S.A. 2019 Supp. 21-5203. The crimes here come within that rule.

In reviewing a sufficiency challenge, we construe the evidence in a light most favorable to the party prevailing at trial, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Although criminal intent can be proved with direct evidence, criminals tend not to declare their malevolent state of mind. More commonly, jurors must infer bad intent from

circumstantial evidence. *State v. Thach*, 305 Kan. 72, 83-84, 378 P.3d 522 (2016). Even the most serious crimes may be proved with circumstantial evidence alone. 305 Kan. at 84.

Essentially, Lopez-Sanchez submits he was simply trying to do Yvonne a favor and she hoodwinked him. As a result, he says he could not have harbored any criminal intent. So the jury erred in finding him guilty. On appeal, Lopez-Sanchez treats the outcome as one unsupported in the evidence, since there was no evidence of bad intent on his part. But the argument suffers from a flaw that is fatal given our standard of review on appeal. The jurors would have acted well within their prerogative as the fact-finders at trial to conclude Lopez-Sanchez fabricated Yvonne and her tales of woe. The jurors had ample reason to do so. And it is not our place to look behind those reasons or to reject them when they have some support in the evidence.

First, of course, as we have already said, Lopez-Sanchez offered nothing apart from his own story to show that Yvonne existed. He testified she sent him text messages after they met in Topeka, but he didn't produce copies of those messages. When Lopez-Sanchez spoke with the detective right after his arrest, he didn't mention Yvonne. Even assuming some language barrier between him and the officer, they did communicate. The jury reasonably could find Lopez-Sanchez' failure to bring up Yvonne then to be telling.

Moreover, pieces of Lopez-Sanchez' described interaction with Yvonne make little sense. Most obviously, perhaps, Lopez-Sanchez told the jury Yvonne said she had gotten the check from the Houston company's president. But the check was payable to Lopez-Sanchez rather than to Yvonne. Less obviously (but still quite suspiciously), the check was dated the same day Lopez-Sanchez took it to the bank. So Yvonne, who apparently was destitute in Topeka, must have received it from the president of the Houston company that day or the company president postdated the check and at Yvonne's request left the payor line blank or it made out to Lopez-Sanchez, even though he would not have

5

agreed to help her until days later. If Yvonne had a postdated check, why didn't she mention it to Lopez-Sanchez in Topeka and invite his assistance then? All of that is, at best, improbable and really tumbles rapidly toward the fantastic.

Having rejected Lopez-Sanchez' account of Yvonne as a deliberately false narrative—an entirely sound determination based on the trial evidence—the jury could then fairly conclude his mendacity was itself evidence of a guilty mind. See *United States v. Wilson*, 788 F.3d 1298, 1311-12 (11th Cir. 2015); *State v. Mayeux*, ___ So. 3d ___, 2020 WL 508655, at *2 (La. 2020); *Sumpter v. State*, No. 117,732, 2019 WL 257974, at *9 (Kan. App.) (unpublished opinion) *rev. denied* 310 Kan. 1071 (2019). In short, the jury had sufficient reason to reject Lopez-Sanchez' trial testimony as false. The factual frame for the crimes was sufficient to support a circumstantial finding that Lopez-Sanchez had the requisite criminal or bad intent when he tried to cash the check. The point raised on appeal, therefore, necessarily fails. The convictions were sufficiently supported in the evidence.

Affirmed.